IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PAMELA A. ROARK                                                                                    PLAINTIFF

Vs.                                       CIVIL NO. 06-5211

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                       DEFENDANT

**MEMORANDUM OPINION**

Pamela Roark ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on September 18, 2003, alleging an inability to work since January 12, 2001, due to degenerative disc disease ("DDD"), a heart condition, a pars defect, thyroid problems, high cholesterol, lower back pain, and status post disc fusion. (Tr. 51-54).[2] An administrative hearing was held on April 14, 2006. (Tr. 304-305).

At the time of the administrative hearing, plaintiff was thirty-seven years old and possessed a high school education with some college credit. (Tr. 89, 304-305). Plaintiff has past relevant work ("PRW") experience as a factory worker. (Tr. 123).

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The record reveals that plaintiff filed a prior application for DIB. (Tr. 11, 25). An ALJ issued a favorable decision on June 26, 2003, granting plaintiff a closed period of disability from January 12, 2001, through April 30, 2002. Therefore, plaintiff cannot be found disabled prior to June 27, 2003, the day after the date of the prior ALJ's decision. *See Robbins v. Secretary of HHS*, 895 F.2d 1223, 1224 (8th Cir. 1990).

The Administrative Law Judge ("ALJ"), issued a written decision on June 15, 2006. (Tr. 11-21). The ALJ determined that plaintiff suffered from a combination of severe impairments, namely back pain and osteoarthritis, but that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 13-16). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC") to lift and/or carry up to 10 pounds frequently; sit for 6 hours during an 8-hour workday with the option of standing every hour to stretch for a few seconds before resuming a seated position; stand and walk for up to 2 hours during an 8-hour workday but no more than one-half mile at any one time; never push/pull, operate controls with her feet, climb, balance, stoop, crouch, kneel, or crawl; and, must avoid all exposure to heights and moving machinery. (Tr. 17). With the assistance of a vocational expert, the ALJ concluded that plaintiff could still perform work as a receptionist, bookkeeper, and office clerk. (Tr. 20).

On September 5, 2006, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record

2

contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the

listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the record contains only one RFC assessment completed by an examining doctor. Dr. Robert Thompson, an orthopedist, performed a consultative examination of plaintiff on

4

December 1, 2005. (Tr. 199-202). Her physical exam revealed limited motion in her lower back, no ankle jerk in the left ankle, decreased sensation in the first web space on the left, and weakness of dorsiflexion of the left great toe. Dr. Thompson diagnosed plaintiff with lumbar spine disc disease status post fusion surgery with residual left L5 radiculopathy and S1 radiculopathy on the left side. (Tr. 199). He concluded that plaintiff could lift and/or carry up to 10 pounds frequently; sit for 3-4 hours during an 8-hour day; stand and/or walk for 0-2 hours during an 8-hour workday; never push, pull or operate machinery with her feet; and, never climb, balance, stoop, crouch, kneel or crawl. Dr. Thompson also indicated that plaintiff should avoid all exposure to heights and moving machinery. (Tr. 202).

The only other RFC assessment was completed by a non-examining, consultative doctor. On February 4, 2004, Dr. Alice Davidson reviewed plaintiff's medical records and concluded that plaintiff could occasionally lift 50 pounds; frequently lift 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; and, sit for about 6 hours in an 8-hour workday. (Tr. 183-191). Dr. Martinson also determined that plaintiff could only occasionally stoop and crouch, but that there were no manipulative, visual, communicative or environment limitations. (Tr. 185-187).

The ALJ dismissed Dr. Thompson's sitting limitations, stating that plaintiff was a full-time college student in landscape architecture and intended to work as a landscape architect when she completed school. Further, he noted that plaintiff had gone on a trip to Europe with her class and was able to ride in a car for an hour. While it is true that plaintiff was attending college, her longest class was three hours in length. (Tr. 306). We note, however, that plaintiff was accommodated by the University with regard to the use of a special chair in the classroom, allowing her to get up and down

5

when needed during classes, and allowing her to do much of her "studio" or class work at home, where she is able to sit and stand as necessary. (Tr. 325-334). In fact, plaintiff testified that she had to stand up several times during each class and reported being able to sit for only 30 minutes uninterrupted. (Tr. 313). During the administrative hearing, plaintiff was even uncomfortable and was told that she could stand up if necessary. (Tr. 311).

With regard to employment after graduation, plaintiff testified that she was not sure she would be able to do full-time work as a landscape architect. (Tr. 306). She even stated that she would likely pursue a part-time position, due to her medical condition. (Tr. 306). Plaintiff reported experiencing days when it is all she "can do to get up." (Tr. 312). Her final grade in two courses had even been lowered due to excessive absences. (Tr. 315-316).

Although plaintiff did go to Europe with her class, plaintiff stated that this was a mandatory field trip and that is was very uncomfortable for her. (Tr. 335). She testified that she had to stand up and walk along the corridor of the plane frequently during the flight. Plaintiff also stated that she had trouble getting on the trains, getting to and from her hotel room, and keeping up with her classmates. (Tr. 336). Had this field trip not been mandatory, plaintiff indicated that she would not have gone. Jeanette Wilson, a classmate, also reported that the trip was physically hard for plaintiff, that she had trouble keeping up with the class, and was often the last person to arrive at a destination. (Tr. 125).

The objective medical evidence also supports Dr. Thompson's sitting limitation. Her medical records reveal that she had a history of Hodgkin's disease in 2001 and was treated via chemotherapy; a herniated nucleus pulposis at the L2-5 levels that necessitated fusion surgery; a fractured pelvis from a motorcycle accident; a T8 fracture; a right ovarian cyst; tachybrady dysrhythmia syndrome;

6

hypertension; migraine headaches; mitral valve prolapse; hypothyroidism; hyperlipidemia; chronic obstructive pulmonary disease; depression; and, nicotine dependence. (Tr. 152, 203). Dr.Carol Fossey, a treating doctor, even opined that plaintiff's major life activities were affected by her diagnoses. (Tr. 152, 203). She indicated that exertion, particularly of a long duration, could aggravate plaintiff's symptoms. Dr. Fossey also prescribed Tylenol # 3 to treat plaintiff's pain and acknowledged that sitting for an extended period of time exacerbated plaintiff's pain. (Tr. 151).

Further, repeated physical exams revealed tenderness in the T9 region, midline, as well as in the paraspinal musculature and a markedly decreased limitation in rotation in the lumbar spine. (Tr. 148, 261). X-rays in October 2003 also showed some compression at the T9-10 level with probable osteophytes and mild degenerative disc changes at multiple levels throughout the mid-to-lower thoracic spine. (Tr. 148, 163).

Given this evidence, we believe that the case should be remanded to the ALJ for further consideration of plaintiff's RFC assessment, particularly plaintiff's ability to sit. While the evidence does support Dr. Thompson's finding that plaintiff can sit 3-4 hours per 8-hour day, we do not find that substantial evidence supports the ALJ's determination that plaintiff can sit for six hours per day with the option of standing every hour to stretch for a few seconds before resuming a seated position. Thus, on remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant

time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 28th day of September 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE